IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HECTOR NEGRON TORRES, et als.

    Plaintiffs

    v.       CIVIL NO. 98-2013 (GG)

STATE INSURANCE FUND CORP., et als.

    Defendants

**OPINION AND ORDER**

Pending before this court is the State Insurance Fund Corporation's (SIF) Motion for Summary Judgment, which co-defendants' Ada Guzmán and Oscar Ramos joined, arguing that the action is time barred or in the alternative, that Guzmán and Ramos are entitled to qualified immunity. (Docket entries #36 & 45). Plaintiffs' duly oppose. (Docket entry #52). Replies and sur-replies were also filed. (Docket entries #57 & 61).

**BACKGROUND**

This is an action seeking injunctive relief and damages based on the alleged political discrimination suffered by plaintiff Héctor Negrón, a member of the Popular Democratic Party (PDP), by co-defendants Oscar Ramos (Administrator of the SIF) and Ada Nivia Guzmán (Director of Personnel of the SIF), both affiliates of the New




AO 72A
(Rev.8/82)

**CIVIL NO. 98-2013 (GG)**                                                          2

Progressive Party (NPP). **See**, Excerpts of Depositions, Exhibits #20 & 40, Plaintiffs' Opposition. The action is brought to this court pursuant to 42 U.S.C. §§1983 & 1985 and Article 1802 of the Puerto Rico Civil Code.

According to the statement of uncontested facts submitted by the parties in the Joint Initial Scheduling Conference Memorandum, Mr. Negrón has been continuously employed by the SIF since 1990. He currently occupies the position of "Oficial Pagador Auxiliar II", assigned to the Arecibo Region, Utuado Office of the SIF. On August 19, 1996, the SIF published a call for the position of Administrative Official I, also assigned to the Arecibo Region, Utuado Office. **See**, Joint Statement of Uncontested Facts, docket entry #15, pp. 8-9. On August 29, 1996, Mr. Negrón applied for the position. **See**, Excerpt of Negrón's Deposition, Exhibit #9, Plaintiffs' Opposition, docket entry #51. Among the other candidates who applied for the position was Mr. Javier Vélez, who had been occupying the position as a transitory employee since June 16, 1995. **See**, Letter of Appointment, Exhibit #51 & Excerpt of Vélez' Deposition, Exhibit #52, Plaintiffs' Opposition. Mr. Vélez is an affiliate of the New Progressive Party (NPP). **See**, Excerpt of Vélez' Deposition, Exhibit #57, Plaintiffs' Opposition.

The call was closed on Friday, August 30th, 1996. **See**, Joint Statement of Uncontested Facts, *supra*. Nonetheless, on Tuesday, September 3, 1996, two more candidates had to be added to the

**CIVIL NO. 98-2013 (GG)**                                                          3

Certificate of Eligible Candidates. **See**, Excerpt of Guzmán's Deposition, Exhibit #2 of Motion for Summary Judgment; Exhibit #64 of Plaintiffs' Opposition. The Certificate of Eligible Candidates was issued in September, 1996. **See**, Letters, Exhibit #17, Plaintiffs' Opposition. Plaintiff occupied the fifth position in the listing. **See**, Stipulated Fact #4, Joint Initial Scheduling Conference Memorandum, Docket entry #15. Mr. Vélez was not certified as an eligible candidate. **See**, Certificates of Eligible Candidates, Exhibits #4 & 5, Plaintiffs' Opposition. Due to the Electoral Ban[1] in effect from September 5, 1996 through January 5, 1997[2], the employment call was left in suspense. **See**, Excerpt of Guzmán's Deposition, Exhibit #25, Plaintiffs' Opposition; Letter from Mrs. Guzmán in response to the Ombudsman's inquiry as to the status of the

---

[1] §1337. Prohibition-

> For the purpose of guaranteeing the faithful application of the merit principle in public service during the period before and after elections, the authorities shall abstain from making any movement of personnel involving areas essential to the merit principle, such as appointments, promotions, demotions, transfers and changes in the category of employees.
>
> This prohibition shall comprise the period of two (2) months before and two (2) months after General Elections are held in Puerto Rico....

**See**, Law No. 5 of October 14, 1975, as amended, 3 L.P.R.A. §1337.

[2] We take judicial notice that, during the period in question in this case, General Elections in Puerto Rico were held on November 5, 1996.

**CIVIL NO. 98-2013 (GG)**                                                                4

employment call[3], Exhibit #33, Plaintiffs' Opposition.

Meanwhile, Mr. Vélez remained occupying the position as a transitory employee. On March 4, 1997, plaintiff filed a grievance attacking the fact that the process to select a candidate had not been concluded and that the SIF had not complied with the applicable rules and regulations governing the process of selection under an employment call. **See,** Excerpt of Negrón's Deposition, Exhibit 11, Plaintiffs' Opposition. Approximately, eleven (11) months after the Electoral Ban had ceased, on December 30, 1997, the SIF sent a letter to Mr. Vélez informing him that he had been granted a regular, career appointment as Administrative Official I. This was done under a plan approved by the SIF during 1997 to extend the benefits of Puerto Rico Law No. 256 of December 28, 1995, to those transitory employees holding managerial positions for more than a year. **See,** Letters, Exhibits #7 & 10, Motion for Summary Judgment. The designation was officilized on May 30, 1998, retroactive to January 1st, 1998. **See,** Stipulated Fact #6, *supra*.

---

[3]During late September and October, 1996, plaintiff sent a total of three letters to Mrs. Guzmán and Mr. Ramos inquiring about the status of the employment call in question. None of his letters were answered until Mr. Negrón went to the Ombudsman and through him received a response. **See,** Letters, Exhibit #17, Plaintiffs' Opposition.

CIVIL NO. 98-2013 (GG)                                                          5

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "the pleadings, answers to the interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c) of the Fed.R.Cv.P.; Borshow Hospital & Medical Supplies, Inc., 96 F.3d 10, 13 (1st Cir. 1996). A genuine issue will exist only if a material conflict in the evidence warrants trial because the disputed fact has the potential of changing the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995); Martínez v. Colón, 54 F.3d 980, 983 (1st Cir. 1995).

The initial burden of showing "the absence of a genuine issue concerning any material fact" falls on the party moving for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). If said burden is established, then the nonmoving party is required to show that summary judgment is inappropriate. When considering a motion for summary judgment, the court reviews the record in the light most favorable to the nonmoving party and indulges all inferences favorable to that party but pays no heed to conclusory allegations. Celotex v. Catrett, 477 U.S. 317, 324-25 (1986); McCarthy, at 315; Byrd v. Ronayne, 61 F.3d 1026, 1030 (1st Cir.

**CIVIL NO. 98-2013 (GG)**                                                                                         6

1995); Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). This is so because, the nonmoving party cannot avoid summary judgment by "simply show[ing] there is some metaphysical doubt as to the material facts." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986); Woods v. Friction Material, Inc., 30 F.3d 255, 259 (1st Cir. 1994). Neither can it rest upon "improbable inferences, and unsupported speculation" nor rest upon mere allegation or denials of his pleading". Anderson, 477 U.S. at 256, Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 10 (1st Cir. 1990); Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995), cert. denied 116 S.Ct. 914 (1996).

"Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993) cert. denied 511 U.S. 1018 (1994) (quoting Medina-Muñoz, 896 F.2d at 8. On the contrary, to properly oppose a summary judgement motion, the nonmoving party needs to proffer sufficiently competent and probative evidence to how differing versions of the facts justify a trial. National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995), cert. denied, 115 S.Ct. 2247 (1995); Milton v. Van Dorn Co., 961 F.2d 965, 969 (1st Cir. 1992).

**CIVIL NO. 98-2013 (GG)**                                                                 7

**STATUTE OF LIMITATIONS**

    Defendants first argument in their motion for summary judgment is that this action is time barred.  Section 1983 of Title 42 of the United States Code creates a type of tort liability for redressing deprivation of federal constitutional rights.  <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S.Ct. 2364, 2370 (1994).  "The limitations period governing personal injury actions under the law of the forum state is borrowed for application to Section 1983 claims."  <u>Calero-Colón v. Betancourt-Lebrón</u>, 68 F.3d 1, 2 (1st Cir. 1996) (citing <u>Wilson v. García</u>, 471 U.S. 261, 276-80 (1985) and <u>Guzmán Rivera v. Rivera Cruz</u>, 29 F.3d 3, 4-5 (1st Cir. 1994)).  Accordingly, the one year limitation period prescribed by Article 1868 of the Puerto Rico Civil Code, 31 L.P.R.A. §5498(2), governs claims under §1983.  <u>Id.</u>, at 3.

    Nonetheless, federal law provides the applicable accrual rule. <u>Id.</u> (citing <u>Guzmán v. Rivera</u>, 29 F.3d at 4-5); <u>Street v. Vose</u>, 936 F.2d 38, 39 (1st Cir.1991) (per curiam). Claims under 42 U.S.C. §1983 accrue when the plaintiff knows or has reason to know of the injury which is the basis of the action. **See,** <u>Id.</u> (citing <u>Street v. Vose</u>, 936 F.2d at 40); <u>Rivera Muriente v. Agosto de Alicea</u>, 959 F.2d 349, 352-53 (1st Cir. 1992). **See also,** <u>Chardón v. Fernández</u>, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981). All that is necessary in order to trigger the limitations period is that the employer "must unambiguously indicate that a final decision has been reached". **See,**

**CIVIL NO. 98-2013 (GG)**                                                                 8

Rivera Muriente v. Agosto Alicea, 959 F.2d 349, 353 (1st Cir. 1992) (citing Leite v. Kennecott Copper Corp., 558 F.Supp. 1170, 1174 (D.Mass.), aff'd, 720 F.2d 658 (1st Cir.1983)). In other words, the cause of action accrues "when the claimant receives unambiguous and authoritative notice of the discriminatory act. **See**, Morris v. Governmental Development Bank, 27 F.3d 746, 749 (1st Cir. 1994).

In the case before us, since plaintiff commenced his action on September 4, 1998, our inquiry reduces to whether Mr. Negrón's cause of action accrued more than one year before that date. Defendants contend that, according to plaintiff's deposition testimony, from the very beginning of the process, Mr. Negrón felt discriminated on the basis of his political affiliation, hence, that his action accrued on late August 1996. In the alternative, defendants assert that the filing of the administrative appeal on March 1997 triggered the commencement of the limitations period. On the contrary, plaintiffs assert that on July 1998 Mr. Negrón found out that Mr. Vélez had been granted the position in question, thus, that it is at that point that his cause of action accrued. **See**, Plaintiff's Opposition to Motion for Summary Judgment, p. 18, docket entry #51.

Defendants' theories are without merit. The comment made by plaintiff during his deposition[4] upon which defendants base their

---

4
Q:   What actions do you impute to Ada Nivia Guzmán, that
     you ascribe to political discrimination?

(continued...)

**CIVIL NO. 98-2013 (GG)**                                                              9

argument of prescription is insufficient to set August 1996 as the accrual date. On the other hand, it stems from the record before us that the allegations made by plaintiff during his administrative appeal were aimed at attacking the lack of compliance with the procedural rules and regulations applicable to employment calls. The record before us does not show that plaintiff made any allegation of political discrimination in that process. **See,** Excerpt of Negrón's Deposition, Exhibit 11 of Plaintiffs' Opposition.

The gist of plaintiff's claim is precisely political discrimination; that defendants' acts aimed at granting the position of Administrative Official I to an affiliate of the NPP deprived Mr.

---

[4](...continued)
A: She and Mr. Oscar Ramos have knowledge of the political affiliation of Mr. Vélez.

Q: And that by itself is discrimination, that they have knowledge of the political affiliation?

A: She...

Q: And that by itself is discrimination?

A: No, the discrimination started since the beginning of the process, that was never concluded, this, a process which requires that the employees must be advanced, retained and treated according to the merit principle, and that regulation was not applied to me, nor to any of the individuals included in the Certification, nor to any of the employees who applied for the position, because they were not even notified, either formally or informally that, they were included or not in the Certificate of Eligibles. (Our translation).

**See,** Excerpt of Negrón's Deposition, Exhibit #1, pp. 73-74, Motion for Summary Judgment.

**CIVIL NO. 98-2013 (GG)**                                                    10

Negrón of both his property right of acquiring said employment position and his liberty interest to be free from political discrimination. (Docket entries #1, 12 & 15). Clearly, the injury claimed by plaintiff accrued when the position he was opting for was granted to Mr. Vélez. Meanwhile, since the process initiated by the employer to select a candidate had not been concluded nor canceled, the Certificate of Eligibles was still valid and the position remained available, all the individuals who applied for it retained a reasonable expectancy of obtaining the position. Put another way, before the final selection of the candidate, no concrete injury had been inflicted. Moreover, it is at that juncture (the selection of the candidate) that Negrón could have reliably known of the injury to which his lawsuit relates. **See**, Morris v. Government Development Bank of Puerto Rico, 27 F.3d at 749; Rivera Muriente v. Agosto Alicea, 959 F.2d at 353 (collecting cases).

The record before us shows that on December 30, 1997, Mr. Vélez received a letter notifying him that the position of Administrative Official I had been granted to him. **See**, Letters, Exhibit #7, Motion for Summary Judgment. In addition, plaintiff admits in his deposition that it was somewhere around January 1998 that he learned from another employee of the Utuado office that the position in question had been granted to Mr. Vélez as a career employee. **See**, Excerpt of Negrón's Deposition, Exhibit 1, Motion for Summary Judgment. Moreover, as the parties stipulated in the Joint Initial Scheduling

**CIVIL NO. 98-2013 (GG)**                                                          11

Conference Memorandum, the designation of Mr. Vélez to this position with the status of career employee was made official on May 30, 1998, retroactive to January 1, 1998. **See**, Stipulated Fact #6, *supra*. Since all of these dates are within the one year limitations period, there is no doubt that this action is not time barred as alleged by the defendants.

**POLITICAL DISCRIMINATION**

As we previously stated, Mr. Negrón claims that he was deprived of both a property right[5] and a liberty interest without due process of law because of political discrimination.

Non-policymaking government employees, like Mr. Negrón, who allege political discrimination, have a threshold burden to produce evidence sufficient to allow a rational jury to find that their political affiliation was a substantial or motivating factor behind the adverse employment action taken against them. **See**, Baez-Cruz v.

---

[5]The argument of deprivation of a property right is not available to the plaintiff under the particular circumstances of this case. To establish a property right, "'a person clearly must have more than an abstract need or desire for it...more than a unilateral expectation of it...instead [a person] must have a legitimate claim of entitlement to it'". Rodríguez-Pinto v. Tirado Delgado, 982 F.2d 34, 40 (1st Cir. 1993)(citing Board of Regents v. Roth, 408 U.S. 564, 577). A claim of entitlement based on being fifth in a list of twelve eligible candidates to a position opened to competition is clearly insufficient to sustain a violation of a property right.

**CIVIL NO. 98-2013 (GG)**                                                  12

Municipality of Comerio, 140 F.3d 24, 28 (1st Cir. 1998); Rodríguez-Rios v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998). In order to meet this burden, the plaintiff need not produce direct evidence of a politically-based discriminatory animus. **See,** Acosta-Orozco v. Rodriguez-de-Rivera, 132 F.3d 97, 101-02 (1st Cir. 1997). This could be established with circumstantial evidence alone. *Id.;* Acevedo-Diaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993). However, the plaintiff must show that there is a causal connection linking defendant's conduct to the plaintiff's political beliefs. **See,** Larou, 98 F.3d at 662; Aviles-Martinez v. Monroig, 963 F.2d 2, 5 (1st Cir. 1992).

Once the plaintiff meets his burden, the government employer must articulate a nondiscriminatory basis for the adverse employment action and must prove by a preponderance of the evidence that the employment action would have been taken without regard to the plaintiff's political affiliation. **See,** Mount Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Rodriguez-Rios, 138 F.3d at 24; Acevedo Garcia v. Vera Monroig, 30 F.Supp.2d 141, 153 (D.P.R. 1998). "Summary judgment would be warranted . . . only if defendants' evidentiary proffer compelled the finding that political discrimination did not constitute a "but for" cause for the [adverse action]." Acosta-Orozco v. Rodriguez-de-Rivera, 132 F.3d at 103 (quoting Jirau-Bernal v. Agrait, 37 F.3d 1, 4 (1st Cir. 1994)).

The facts in this case show a lack of political motive in the

**CIVIL NO. 98-2013 (GG)**                                                              13

designation of Mr. Vélez as a career employee to the position of Administrative Official I. It has been established that the employment call for said position, which was finally closed merely two or three working days before the Electoral Ban started, was stayed by it until January 5, 1997.

Furthermore, since early 1996, the SIF had been contemplating the possibility of extending the benefits of Puerto Rico Law No. 256, *supra*, to all the transitory employees who had been working with the SIF in managerial positions for over a year and who had satisfactory evaluations.[6]  **See**, Letters, Exhibits #8 & 10 of the Motion for Summary Judgment. For example, on February 14, 1996, Mrs. Guzmán received a legal opinion which concluded that the SIF could extend the benefits of Law No. 256 to transitory employees holding managerial positions.[7]  **See**, Letter, Exhibit #8, Motion for Summary Judgment.

In fact, on October 29, 1996, this benefit was extended to approximately 255 unionized SIF's employees.  **See**, Tables, Exhibit

---

[6]Puerto Rico Law No. 256 was a temporary statute approved in 1995 wherein every transitory employee who, as of June 30, 1996, had held for a year or more a position of fixed duration with permanent career service duties in agencies of the Government of the Commonwealth of Puerto Rico and met the minimum training and experience requirements of the position, would be granted career status.

[7]We take notice of the legal opinion issued by another law firm in 1997 which concludes that the SIF should refrain from extending the benefits of Law No. 256 to it's employees. (Exhibit #34, Plaintiffs' Opposition). Nonetheless, it is not our task to decide whether the SIF could *vel non* extend the benefits of Law No. 256 to it's employees.

**CIVIL NO. 98-2013 (GG)** 14

#9, Motion for Summary Judgment. However, the process regarding the managerial employees continued way into late 1997. **See**, Tables and Letters, Exhibits #9 & 10, Motion for Summary Judgment. On December 4, 1997, the Federation of Managerial and Professional Employees of the SIF sent a letter to Mr. Ramos naming over forty (40) transitory employees holding managerial positions who could benefit from this plan. Among those named in the list was Mr. Vélez, at that time had been holding the position for two and a half years and had a more than satisfactory evaluation.[8] **See**, Job Evaluation of October 29, 1997, Exhibit #7, Motion for Summary Judgment. Accordingly, on December 30, 1997, he was granted the benefits of Law No. 256. Obviously, this act, turned moot the employment call in question in this case.

There is no proof nor indication on the record before us that the determination to extend the benefits of Law No. 256 to hundreds of SIF's union and management employees with transitory status was premised on political animus. Neither is there evidence that the political affiliation of these employees played any role in the application and implementation of the plan. The fact that Mr. Vélez is an affiliate and activist of the NPP and that he happened to be among the numerous employees who qualified and were benefitted by this plan, is insufficient to establish political discrimination.

---

[8]In fact, when the employment call was opened, Mr. Vélez had already been holding the position for over a year.

**CIVIL NO. 98-2013 (GG)**                                                                 15

Hence, plaintiff's self-serving and groundless conjectures that the criterion used by the SIF, Mr. Ramos and Mrs. Guzmán to grant Mr. Vélez the position of Administrative Official I was political,[9] is insufficient to preclude and defeat summary judgment.

This is even more so, if we also take into account the fact that Mr. Negrón has been uninterruptedly employed with the SIF during the past nine (9) years receiving salary increases. **See**, Excerpt of Negrón's Deposition, Exhibit #1, pp. 24-28, Motion for Summary Judgment. Additionally, besides the allegation that he was not given the position of Administrative Official I, there is no evidence on the record of any adverse action taken against him by any of the defendants. Moreover, Mr. Negrón admitted in his deposition that he has no proof that Mrs. Guzmán and Mr. Ramos knew his political affiliation before he revealed it during the administrative appeal on March, 1997. **See**, Excerpt of Negrón's Deposition, Exhibit #1, p. 77, Motion for Summary Judgment.

Therefore, in view of all of the above, we conclude that plaintiffs have failed to proffer sufficient evidence of political animus. Accordingly, since we are convinced that defendant's evidence compels a finding that political affiliation did not motivate the action complained of in this case, the motion for summary judgment is **GRANTED**.

---

[9]**See**, Excerpt of Negrón's Deposition, Exhibit #14, Plaintiffs' Opposition.

CIVIL NO. 98-2013 (GG)          16

**PENDENT STATE CLAIMS**

When summary judgment is granted under §1983, it is not proper to grant summary judgment on the pendent state claims. Instead, we are directed to dismiss without prejudice said claims over which we no longer have jurisdiction, thus allowing the plaintiff to file his cause of action in the state courts, if he so wishes. <u>Rivera v. Murphy</u>, 979 F.2d 259, 264 (1st Cir. 1992); <u>Correa-Martínez v. Arrillaga-Beléndez</u>, 903 F.2d 49, 58 (1st Cir. 1990).

**WHEREFORE**, for the reasons herein stated, defendants' motion for summary judgment is **GRANTED**. Consequently, the federal claims are **DISMISSED WITH PREJUDICE**. Nonetheless, plaintiffs' pendent state claims are **DISMISSED WITHOUT PREJUDICE**. Judgment shall be entered accordingly.

**SO ORDERED.**

San Juan, Puerto Rico, this 9th day of May, 2000.

GILBERTO GIERBOLINI
Senior U.S. District Judge

AO 72A
(Rev.8/82)